## THE GEORGE HAWLEY et al.

### (Circuit Court of Appeals, Fifth Circuit. April 27, 1917.)

### No. 2946.

SALVAGE ☞27—AMOUNT OF COMPENSATION—RESCUE OF SINKING VESSEL.

A steamship, which had just completed loading with cross-ties at a wharf in New Orleans, listed, permitting the water to enter the portholes on one side, causing the stern of the vessel to sink until it rested on the bottom. The master was absent, but the wharf watchman called to two tugs owned by libelant, which were passing, and they promptly came to the assistance of the sinking ship. After 3½ days of almost continuous work by the two tugs, with some assistance from others, the vessel was floated without serious injury to it or its cargo. One of the tugs remained alongside for six days more, furnishing steam for pumping, etc. There was no great danger involved in the work, but it was promptly and efficiently done. The tugs were worth about $75,000 and $40,000, respectively, and the salved vessel and cargo $215,000. *Held*, that a salvage award of $10,000 to the tugs and crews was too small, being but little more than the actual value of the service rendered, and that it should be increased to $17,500.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. §§ 65, 66.]

Appeal from the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Suit in admiralty by the Bisso Towboat Company and others against the steamship George Hawley, of which the Boston-Virginia Transportation Company was claimant, and others. Decree for libelant, from which the Towboat Company appeals. Modified.

John D. Grace, of New Orleans, La., for appellant.

Henry P. Dart, Benjamin W. Kernan, and Henry P. Dart, Jr., all of New Orleans, La. (Stimson, Stockton, Livermore & Palmer and John F. Volk, all of Boston, Mass., on the brief), for appellees.

Before PARDEE, WALKER, and BATTS, Circuit Judges.

WALKER, Circuit Judge. This is an appeal by libelants from a decree rendered in their favor against the steamship George Hawley and its cargo, the claimants thereof, and their surety on a release bond. The complaint against the decree is because of the alleged insufficiency of the amount awarded. The total amount awarded by the decree to the libelants who were before the court when the decree was rendered, the claims of other libelants having been settled, was $10,000. Of this amount the sum of $479.17 was awarded to the officers and crew of the towboat Independent, $233.30 to the officers and crew of the towboat El Toro, $15 to George Ruppert, $49.95 to J. W. Tyler, and the balance, $9,222.58, to the Bisso Towboat Company, owner of the towboats El Toro and Independent.

At about 6:45 o'clock in the evening of Friday, February 28, 1913, while the George Hawley was lying at the Valence street wharf in the port of New Orleans, loaded with cross-ties, and ready to start on a voyage, it listed to starboard, which was towards the wharf, with the result that water poured through portholes on the starboard side,

which had been left open for ventilation, and the stern end of the ship sank until it reached the bottom of the river; its bow remaining afloat. The master of the vessel was not present at the time, having gone into the city to sign the bills of lading for the cargo. The watchman at the wharf saw what had occurred to the ship; telephoned to the office of the Bisso Towboat Company that a ship was sinking at the Valence street wharf, and suggested that a tug or tugs be sent right away. An officer of the Towboat Company replied that two of its tugs were on their way with tows, and ought to be just about there at that time. In a few minutes the watchman saw the tug Independent as it was passing in the river and hailed it. That tug promptly went to the assistance of the Hawley. A little later the tug El Toro did the same. From that time until the morning of Tuesday, March 4th, both the tugs were engaged in rescuing the Hawley, except that each of them was away and doing something else during part of Saturday, March 1st. On the following Tuesday morning the Hawley was again afloat. The vessel and cargo were saved without very serious loss to either. The Independent remained alongside until the morning of March 10th. On March 4th, 5th, and 6th it furnished steam to the Hawley for pumping, etc., required to restore the vessel and cargo to such condition that its officers and crew could resume control and operate it with its own power.

The appraised value of the Hawley was $195,000, and of its cargo $20,650—a total of $215,650. It had about 300 tons of coal in its bunkers, worth over $600. The El Toro cost its owner about $75,000, and the Independent was bought for about $40,000. Each of them was well equipped for rendering salvage services, and was kept constantly ready to render such service when required. There were other vessels in the port of New Orleans capable of rendering the service which the two tugs mentioned rendered.

. The evidence in the case does not leave it open to question that a meritorious salvage service was rendered by the two tugs mentioned and their owner, officers, and crews, which was participated in by other parties, who have been settled with. The amount awarded for the part of that service which was rendered by the appellants should be enough to cover an adequate compensation for the labor and expense which the enterprise required of them, and also a reward allowed as a bounty in pursuance of the public policy of encouraging voluntary exertions for the saving of imperiled ships and their contents; the amount of such reward depending upon the special facts and merits of the service rendered. The Craster Hall, 213 Fed. 436, 130 C. C. A. 72. The evidence was such that it well would have supported an award of $7,000 or more for the service rendered by the two tugs, if they had been employed under a contract providing for the payment of what the service was reasonably worth, whether it was successful or not. This being so, a result of the decree as it was rendered is that it may be regarded as awarding about $2,200 as a reward to the owner of the tugs for the services they rendered. Our conclusion is that such an amount is greatly less than a suitable reward, in addition to adequate compensation, for the services rendered by the two tugs. It is true that it was accidental that the two tugs happened to be near by when the mishap

occurred to the Hawley, and were able to go to its rescue probably sooner than the master of the vessel, if he had been present at the time, could have procured other aid if he had promptly sought it. But this does not detract from the merit of the service voluntarily and promptly rendered by the two tugs, and with successful results.

The amount to be allowed as a reward for rendering that service cannot properly be as great as it should have been if the service had been rendered in rough weather and near a dangerous coast, instead of in fair weather and in a safe harbor, or if the evidence had clearly shown, which it did not, that the bottom of the river at the place where the partly sunken vessel came in contact with it was so sloping or declivitous as to make it liable that such a heavy object resting upon it would slip off into deeper water, thereby greatly enhancing the peril of both the rescued and rescuing vessels. The evidence does not convince us that the work of saving the ship and its cargo, conducted as it was with adequate care and skill, exposed the rescuing vessels, or either of them, to any very serious hazards, or their officers and crews to unusual hardships or grave perils. At any rate, the salvage work was done without serious injury to either the vessels or the men engaged in it, and the result of it was that the Hawley and its cargo were rescued without any very serious damage which was attributable to what was done in saving them. In view of the value of what was saved and of the vessels which participated in the salvage service, of the time, labor, and expense involved in that service, of the risk of getting nothing in return in the event of the failure of the enterprise, and of all the attending circumstances, our conclusion is that the total amount to be awarded to the appellants should be $17,500, instead of $10,000, the amount awarded by the decree appealed from, and that the additional amount here awarded should be allotted to the Bisso Towboat Company, the owner of the two tugs, the Independent and the El Toro. The part of the amount awarded by the decree of the District Court which was allotted to the officers and crews of the two tugs were sums equal to three times the amount of their wages during the time they were employed in behalf of the Hawley. It is not made to appear that there was such inadequacy in these allowances as to call for a change of this feature of the decree.

The decree appealed from will be here modified, as above indicated, and, as so modified, is affirmed, with costs against the appellees.